**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| DAVID J. HARMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:18-cv-02621-TWP-TAB |
| ) | |
| PAUL A. TALBOT, M.D., ) | |
| ALEYCIA MCCULLOUGH, H.S.A., ) | |
| CARRIE WELDER, Med. Admin. Ass., ) | |
| CORIZON MEDICAL SERVICES, LLC, ) | |
| WEXFORD OF INDIANA, and ) | |
| JANET DECKER-RADFORD, NLP, ) | |
| ) | |
| Defendants. ) | |

**ENTRY GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Dr. Paul Talbot, Carrie Welder, and Wexford of Indiana LLC (collectively, the "Wexford Defendants"), (Dkt. 67), and a Motion for Summary Judgment filed by Corizon Medical Services, LLC, Paul Talbot, M.D., Janet Decker-Radford, Carrie Welder, and Aleycia McCullough (collectively, the "Corizon Defendants"), (Dkt. 71). Plaintiff David J. Harman ("Mr. Harman") brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. For the reasons explained in this Entry, the Defendants' Motions for Summary Judgment, (Dkts. 67, 71), are **granted**.

### I.  SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(a). Whether a party asserts that a fact

is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827

(7th Cir. 2014). The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 572-73 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II. FACTUAL BACKGROUND

The facts supported by admissible evidence and viewed in the light most favorable to Mr. Harman, the non-moving party, are as follows. At all times relevant, Mr. Harman was an inmate incarcerated at the Pendleton Correctional Facility ("Pendleton"). (Dkt. 10 at 2.) From his arrival at Pendleton through February 2017, Corizon Medical, Inc. ("Corizon") was the Indiana Department of Correction ("IDOC") medical service provider. *Id.* at 2. In February 2017, Corizon stopped providing medical care to Indiana prisoners, and Wexford of Indiana LLC ("Wexford") became the new IDOC medical service provider. *Id.*

Mr. Harman suffers from chronic back pain that predates the time period relevant to this suit and he has suffered from back pain for years. (*See* Dkt. 69-1 at 1; Dkt. 72-1 at 4.) He had previously been prescribed the use of a cane and multiple medications, including the opioid Methadone, which alleviated his back pain "for only about an hour," and Flexeril. (Dkt. 72-1 at 1.) Mr. Harman's use of Methadone was discontinued on June 12, 2015. *Id.* at 4.

On August 18, 2015, Dr. Paul Talbot ("Dr. Talbot") began treating Mr. Harman, examining him for the first time. *Id.* at 4. During this initial examination, Dr. Talbot took notes on Mr. Harman's self-reported history with chronic back pain. *Id.* Mr. Harman reported to Dr. Talbot that he believed his back pain began in 2006 after a work-related accident that resulted in three

3

herniated discs. *Id*. At that time, Mr. Harman saw an orthopedic surgeon, Dr. Anton Thompkins at Chesterton Indiana Lakeshore Bone and Joint Clinic, who "want[ed] to avoid surgery for as long as he could." *Id*. Mr. Harman reported back pain that was aggravated with movement and that was alleviated with Flexeril, Methadone and Vicodin. *Id*. Dr. Talbot reviewed Mr. Harman's medical history and charted that 2013 lumbar spine x-ray and MRI revealed mild degenerative joint disease with moderate bilateral neural foraminal stenosis with osteophyte complexes in the lower segments. *Id*. Dr. Talbot also noted that Mr. Harman showed no muscle atrophy or loss of muscle tone. *Id*. Based on this assessment, Dr. Talbot prescribed Prednisone to control Mr. Harman's back pain. *Id*. at 5. Dr. Talbot further recommended additional testing and assessment by a neurologist. *Id*.

Although Mr. Harman specifically requested during that initial visit that Dr. Talbot prescribe Methadone for his pain, Dr. Talbot did not do so. *Id*. at 4-5; Dkt. 69-1 at 3. In Dr. Talbot's experience, chronic use of opiates or narcotic pain medication is typically not recommended, particularly in the prison setting where such drugs may be trafficked among inmates. (Dkt. 69-1 at 3.) Dr. Talbot noted that Mr. Harman's previous physician had determined in a prior visit on June 29, 2015 not to renew Mr. Harman's prescription for Methadone. *Id*. Dr. Talbot also noted that Mr. Harman "appeared to overplay his symptoms during testing". *Id*. Based on his examination of Mr. Harman and his review of the medical history, including the discontinuation of Methadone by Mr. Harman's prior physician, Dr. Talbot determined that Methadone was not indicated at that time. *Id*.

Following that initial visit, Dr. Talbot examined and treated Mr. Harman during additional appointments in 2015, including on September 21, October 8, November 10, and December 19, 2015. *Id*. at 4-6. Dr. Talbot continued to monitor Mr. Harman's arthritis through lab testing and

4

prescribed him medications, including prednisone, Neurontin, Tylenol, Robaxin, and Flexeril. *Id.* Dr. Talbot also considered an electromyography ("EMG") in order to place Mr. Harman on track for a neurological consultation. *Id.* at 4. Dr. Talbot also ordered physical therapy for Mr. Harman. *Id.*

On December 19, 2015, Dr. Talbot informed Mr. Harman that his EMG revealed mild nerve damage and ordered a neurological consultation. *Id.* at 5. Dr. Talbot intended to continue Mr. Harman on an escalating care plan that would lead to surgical consultation. *Id.*

On February 27, 2016, Dr. Talbot prescribed Mobic, a non-steroidal anti-inflammatory drug used to treat pain or inflammation caused by arthritis. *Id.* at 6. Mr. Harman refused the prescription. *Id.* On April 12, 2016, Mr. Harman had an off-site specialist consultation with Dr. Charles Howe of St. Vincent Pain Management, who diagnosed him with back arthritis and polyneuropathy and recommended a steroid injection and Neurontin. *Id.* Mr. Harman had a steroid injection that same day, but he refused Neurontin. *Id.* Two days later, Dr. Talbot met with Mr. Harman and again advised him to take Neurontin. *Id.* at 6-7. Mr. Harman agreed to do so. *Id.* at 7. Dr. Talbot also refilled Mr. Harman's Flexeril prescription because Mr. Harman reported that it alleviated his arthritic pain. *Id.* On May 25, 2016, Mr. Harman again saw Dr. Howe for a steroid injection. *Id.* Subsequently, Mr. Harman refused blood tests to monitor compliance with his Neurontin prescription. *Id.*

Throughout 2016 to 2018, Dr. Talbot continued to examine and treat Mr. Harman at periodic medical visits. *Id.* at 7-12. In August 2016, Dr. Talbot noted that Mr. Harman had good motor strength and no muscle atrophy, walked without difficulty, but reported no relief from steroid injections, physical therapy, and medications. *Id.* at 7. Dr. Talbot placed him on a treatment plan toward surgical intervention. *Id.* In October 2016, Dr. Talbot ordered an MRI

5

to assess whether an orthopedic consultation was indicated. *Id*. The results of Mr. Harman's MRI indicated no change from previous diagnostic testing. *Id*. When Dr. Talbot reviewed the MRI results with Mr. Harman at a visit a month later, Dr. Talbot noted that he was able to walk without difficulty and did not appear to show signs of being in pain. *Id*.

On December 8, 2016, Mr. Harman was seen and assessed by a neurosurgeon, Dr. Gautum Phookan. *Id*. at 8. Dr. Phookan diagnosed Mr. Harman as having lumbar stenosis and recommended a lumbar laminectomy to address Mr. Harman's complaints of back pain. *Id*. Mr. Harman reiterated his unwillingness to have surgery. *Id*.

On March 10, 2018, Mr. Harman submitted a Request for Health Care form requesting to be put back on Methadone and taken off Neurontin because Neurontin was ineffective at treating his pain. *Id*. at 10. In response, Dr. Talbot replaced the Neurontin prescription with a prescription for Pamelor, a tricyclic antidepressant used to treat nerve pain. *Id*. To determine the efficacy of Pamelor, a patient must consistently take the medication, allowing for up to two months for the medication to achieve therapeutic levels. *Id*.

On April 12, 2018, Dr. Talbot had another appointment with Mr. Harman during which Mr. Harman reported that Pamelor did not help his back pain. *Id*. at 10; Dkt. 69-2 at 43-45. During this visit, Mr. Harman stated that he wanted neither an increase in his Pamelor prescription dosage nor a nerve pain medication. (Dkt. 69-1 at 10-11; Dkt. 69-2, at 43-45.) Dr. Talbot again counseled Mr. Harman that narcotics and opioids, such as Methadone and Tramadol, were not clinically indicated for his complaints of back pain. (Dkt. 69-1 at 10-11.) Dr. Talbot's review of Mr. Harmon's records showed that Mr. Harman had not consistently taken his Pamelor prescription pursuant to Dr. Talbot's advice. *Id*. at 11. By that date, Mr. Harman had refused more than three consecutive doses of Pamelor, meaning that he did not allow the medication to reach therapeutic levels. *Id*.;

6

Dkt. 69-2 at 43. Dr. Talbot noted that Mr. Harman exhibited no functional impairment or limitation. (Dkt. 69-1 at 10; Dkt. 69-2 at 44.) Based on his clinical assessment and Mr. Harman's unwillingness to take any non-narcotic, non-opioid medication, Dr. Talbot advised Mr. Harman to purchase pain relief medications from commissary because there was no clinical indication for Dr. Talbot to prescribe Mr. Harman narcotic pain medication. (Dkt. 69-1 at 11.)

### III. DISCUSSION

This action is brought pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "[T]he first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

At all times relevant to Mr. Harman's claim, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). Pursuant to the Eighth Amendment, prison officials have a duty to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d

766, 775 (7th Cir. 2014). Deliberate indifference in this context is "something akin to recklessness." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

The Wexford Defendants and Corizon Defendants separately filed motions for summary judgment[1] on Mr. Harman's deliberate indifference claims, (Dkts. 67, 71), that argue similar grounds for summary judgment. The Court will address each of these grounds in turn, discussing Defendants together where appropriate.

## A.     **Nurse Decker-Radford**

First, Defendant Janet Decker-Radford ("Nurse Decker-Radford") is entitled to summary judgment because the undisputed evidence shows that she had no personal involvement with Mr. Harman's medical treatment. "Individual liability under § 1983 … requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago,* 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.... A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.").)

In his response brief, Mr. Harman concedes that Nurse Decker-Radford did not treat him. He states that her name appears on some of his medical records, but that he has no recollection of receiving a Neurontin prescription from her and believes that she "may have been thinking of someone else when looking at [his] records and making entries." (Dkt. 81 at 16.) Because the

---

[1] Mr. Harman has moved the Court for leave to file a surreply to the Defendants' pending motions (Dkt. 88). A surreply may be filed "only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response." Local Rule 56-1(d). A surreply "must be limited to the new evidence and objections." *Id.* Because Mr. Harman's proposed surreply is not limited to addressing new evidence or objections raised in the Defendants' reply briefs, the Court **denies** his motion, Dkt. [88].

undisputed evidence shows that Nurse Decker-Radford had no personal involvement in Mr. Harman's medical care, she cannot be liable for any alleged constitutional deprivation. *Colbert*, 851 F.3d at 657. Accordingly, the Court **grants** Nurse Decker-Radford's motion for summary judgment.

### B.     Ms. Welder and Ms. McCullough

Next, Defendants Carrie Welder ("Ms. Welder") and Aleycia McCullough ("Ms. McCullough") argue that they are entitled to summary judgment on that grounds that, as non-medical administrators, they appropriately deferred to Dr. Talbot's judgment in treating Mr. Harman. (Dkt. 68 at 19-20; Dkt. 73 at 29-30.) The Court agrees.

The Seventh Circuit has held that non-medical personnel who review an inmate's grievances and verify with medical officials that the inmate was receiving treatment are not deliberately indifferent. *See Hayes v. Snyder*, 546 F.3d 516, 526-27 (7th Cir. 2008) (citing *Greeno v. Daley*, 414 F.3d 645, 655-56 (7th Cir. 2005)). The court further explained, "'[i]f a prisoner is under the care of medical experts … a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.'" *Id*. at 527 (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). "The policy supporting the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care is a sound one." *Hayes*, 546 F.3d at 527.

Here, Ms. Welder and Ms. McCullough both appropriately deferred to Dr. Talbot's medical judgment. As a non-medical prison official, Ms. McCullough satisfied her obligation to Mr. Harman when she responded to his complaints, deferred to Dr. Talbot's treatment plan, and advised Mr. Harman that she had no authority to override any medical determinations. *Id*.; s*ee also Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("[T]he law encourages non-medical security and

9

administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so.").

With respect to Ms. Welder, as a medical assistant whose job duties are primarily administrative in nature, Ms. Welder was likewise entitled to defer to Dr. Talbot's judgment. *Johnson v. Snyder*, 444 F.3d 579, 586 (7th Cir 2006) (finding it proper for health care unit administrator—who was also a nurse—to defer to a physician's diagnosis); *but see Berry*, 604 F.3d at 443 (nurses may not blindly defer to a physician's "inappropriate or questionable practice."). Here, there is no evidence that Ms. Welder ever directly interacted with Mr. Harman, was confronted with inappropriate or questionable practices on the part of Mr. Harman's physicians, or was otherwise deliberately indifferent to his serious medical needs. Accordingly, the Court **grants** summary judgment to these two Defendants.

**C.    Dr. Talbot**

The Court must also grant summary judgment to Dr. Talbot because the undisputed evidence shows that he did not demonstrate deliberate indifference in his treatment of Mr. Harman. For a medical practitioner, deliberate indifference can be shown by a "treatment decision that is 'so far afield of accepted professional standards' that a jury could find it was not the product of medical judgment." *Cesal v. Moats*, 851 F.3d 714, 724 (7th Cir. 2017) (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)). The Seventh Circuit has explained that "[a] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have [recommended the same] under those circumstances." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). However, a plaintiff may be able to "establish a departure from minimally competent medical judgment where a prison official persists in a court of treatment known to be ineffective." *Petties v. Carter*, 836 F.3d 722, 729–30 (7th Cir. 2016). And "[i]f a prison doctor

10

chooses an easier and less efficacious treatment without exercising professional judgment, such a decision can also constitute deliberate indifference." *Id.* (internal citations and quotations omitted).

Here, the undisputed evidence shows that Dr. Talbot's treatment of Mr. Harman does not amount to deliberate indifference. In his response brief, Mr. Harman argues that Dr. Talbot persisted in a course of treatment that was ineffective because he did not prescribe opioid medication or refer Mr. Harman to an orthopedic surgeon. However, the record shows that throughout Mr. Harman's history of back pain, Dr. Talbot has ordered multiple courses of care and treatment, including physical examinations, lab work, radiological studies, different types of medications, physical therapy, bottom-bunk permits, and multiple specialist consultations, including referrals to a neurologist and neurosurgeon. (*See* Dkt. 69-1 at 2-11.) Furthermore, Mr. Harman is not entitled to any specific course of treatment and cannot prevail on a deliberate indifference claim solely because he disagrees with Dr. Talbot's medical judgment not to prescribe specific opioids or not refer him to an orthopedic surgeon. *See Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) ("[A]n inmate is not entitled to demand specific care"); *see also Cesal*, 851 F.3d at 722 ("[M]ere disagreement with a doctor's medical judgment is not enough to support an Eighth Amendment violation.").

The undisputed record shows that Dr. Talbot's treatment of Mr. Harman was based on his considered medical judgment based on numerous physical examinations, lab testing, and specialist consultations. (*See* Dkt. 69-1 at 11-12.) Accordingly, no reasonable juror could find that Dr. Talbot's treatment of Mr. Harman "was not the product of medical judgment." *Cesal*, 851 F.3d at 724; *see also Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016) ("By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment.").

Because no reasonable juror could find that Dr. Talbot was deliberately indifferent to Mr. Harman's serious medical needs, he is entitled to judgment as a matter of law.

### D.     **Wexford and Corizon**

Finally, the Court finds that Wexford and Corizon are entitled to judgment as a matter of law because Mr. Harman has not demonstrated he suffered a constitutional violation. Mr. Harman maintains that Wexford and Corizon violated the Eighth Amendment by establishing "bad practices" of denying medical care to prisoners. (*See* Dkt. 81 at 18-24.) Wexford and Corizon are "treated the same as a municipality for liability purposes under § 1983." *See Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010) (holding that a corporation that contracted with a jail to provide health services is "treated the same as municipalities for liability purposes in a § 1983 action"). Thus, to hold a private corporation liable under § 1983, a plaintiff must establish that the alleged "constitutional violation was caused by an unconstitutional policy or custom of the corporation itself." *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). If a plaintiff provides "no evidence of an unconstitutional policy or custom of Wexford itself, [] precedents doom his claim against the corporation." *Id*.

Here, as explained above, Mr. Harman has not suffered a constitutional violation with respect to his medical treatment. Because Mr. Harman did not suffer any constitutional deprivation, Wexford and Corizon cannot be held liable for maintaining an unconstitutional policy or practice. *Shields*, 746 F.3d at 789. For that reason alone, Wexford and Corizon are entitled to summary judgment. *Id*. Additionally, although Mr. Harman argues vaguely in his response brief that Wexford and Corizon engaged in "bad practices of denying proper and adequate medical care," (Dkt. 81 at 19), he does not provide any further clarity of what these bad practices entail nor does he demonstrate the existences of these practices with citations to admissible evidence, as is

12

required of him at this stage. *See* Fed. R. Civ. P. 56(e); Local Rule 56-1(e) and (h). Accordingly, the Court **grants** summary judgment to Wexford and Corizon.

## IV. CONCLUSION

For the reasons stated above, Mr. Harman's motion for leave to submit a surreply, (Dkt. [88]), is **DENIED**, Defendants' Joint Objection to Plaintiff's Motion for Leave to File Surreply, (Dkt. [89]), is **DENIED as moot**, and the Defendants' Motions for Summary Judgment, (Dkts. [67, 71]), are **GRANTED**. Final judgment shall now issue.

**SO ORDERED.**

Date: 9/30/2020

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

David J. Harman, #231831
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

Adriana Katzen
BLEEKE DILLON CRANDALL ATTORNEYS
adriana@bleekedilloncrandall.com

Jarod Zimmerman
KATZ KORIN CUNNINGHAM, P.C.
jzimmerman@kkclegal.com